**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JAPNA, INC.,** | |
| *Plaintiff,* | |
| -against- | **22-cv-10753 (ALC) (RWL)** |
| | **OPINION** |
| **SELFX INNOVATIONS INC. a/k/a FASHINZA, et al,** | |
| *Defendants.* | |

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff JAPNA, Inc. brought this action against Defendants Claudia Ortiz, Tulip Apparels LLC ("Tulip NY"), Tulip Creations Private Limited ("Tulip India"), Luna Skies, LLC ("Luna Skies"), Smarth Gupta and Surender Kumar Gupta (collectively, the "Tulip Defendants"), and SELFX NY, SELFX India, Abhishek, and Pawan. ECF No. 35, First Amended Complaint ("FAC"). Plaintiff alleges Tulip Defendants violated the Defend Trade Secrets Act ("DTSA") and New York trade secrets law, breach of fiduciary duty, faithless service doctrine, and copyright infringement of certain apparel designs.

Tulip Defendants moved to dismiss the Complaint for lack of personal jurisdiction over Tulip India, and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). ECF No. 86. After careful consideration, Defendants' motion to dismiss Plaintiff's Complaint against Tulip India pursuant to Fed.R.Civ.P. 12(b)(2) is **DENIED**. Plaintiff's claims for misappropriation of its distribution process trade secret, and breach of fiduciary duty are **DISMISSED**. Defendants' motion to dismiss Plaintiff's claims for misappropriation of its customer list, faithless servant and copyright infringement is **DENIED**. The Court will afford Plaintiffs the opportunity to amend their Complaint.

1

# BACKGROUND

## I.      Statement of Facts

JAPNA is a clothing design, manufacturer, and sales company. FAC at ¶ 5. Plaintiff is the assignee or exclusive rightsholder for certain copyrighted works ("the Works") originating in the United Kingdom. *Id.* at ¶¶ 165, 167-169, 61-64. "JAPNA acquires, develops, and maintains an inventory of approximately 8,000 exclusive apparel designs, all of which incorporate originally copyrighted patterns that JAPNA has the exclusive rights to copy, distribute, reproduce, and create derivative works of." *Id.* at ¶ 58. Plaintiff alleges it owns two trade secrets: (1) customer and vendor lists ("customer lists"), and (2) a "unique distribution process with respect to delivering its manufactured apparel to customers including its quality control process" ("distribution process"). *Id.* at ¶¶ 51, 55.

Plaintiff employed Ortiz for twelve years until October 2022, and she served in a senior-level position in the design team. *Id.* at ¶¶ 36, 39, 41. "As lead designer, Ortiz was responsible for, among other things, planning and creating JAPNA's seasonal product lines and designing JAPNA's products." *Id.* at ¶ 42. Ortiz had access to "design information," JAPNA's Customer and Vendor lists, company passwords, "information regarding JAPNA's unique product distribution process," etc. *Id.* at ¶ 45.

Smarth had a trial relationship as a vendor for JAPNA which concluded in September 2022. *Id.* at ¶¶ 73-76.Plaintiff alleges that on or around September 2022, Defendants Smarth and Surender "began soliciting JAPNA's key employees, located in New York, with the goal of diverting JAPNA's business to Tulip NY and Tulip India, entities owned by Smarth and Surender." *Id.* at ¶ 78. Smarth and Surender "lured" JAPNA employee Ortiz by offering Ortiz a position in Tulip NY in exchange for "information regarding JAPNA's business . . ., including

its Trade Secrets, the Works, and JAPNA's exclusively licensed Product Design inventory." *Id.* at ¶¶ 84-86. On October 24, 2022, Ortiz resigned from JAPNA. *Id.* at ¶ 95. Plaintiff subsequently discovered that without authorization, Ortiz forwarded or transferred "JAPNA's passwords, Trade Secrets, and the Works, to email accounts and/or cloud storage services controlled by her or other of the Defendants." *Id.* at ¶¶ 97-106. This included customer or vendor information. *Id.* Through Ortiz's conduct, Defendants allegedly acquired, misappropriated, and used JAPNA's Trade Secrets, *Id.* at ¶¶ 108-109, and continue to solicit JAPNA's clients, *Id.* at ¶ 112. Plaintiff asserts that Tulip India, Luna Skies, and Tulip NY "are acting as one 'vertical setup'" and Tulip India acts as the "factory" for Luna Skies and Tulip NY. *Id.* at ¶ 26.

## II.     Procedural History

Plaintiff initiated this action on December 21, 2022. ECF No. 3. Plaintiff filed its Amended Complaint on March 20, 2023. FAC. Plaintiff alleges the following claims with respect to Tulip Defendants: misappropriation of trade secrets, violation of the DTSA, and copyright infringement against all Tulip Defendants; breach of fiduciary duty, and faithless servant doctrine against Ortiz; and aiding and abetting breach of fiduciary duty against defendants Tulip NY, Tulip India, Smarth, Surender, Luna Skies.

On July 26, 2023, Tulip Defendants moved to dismiss the Complaint. ECF No. 86. On August 16, 2023, Plaintiff filed its opposition. ECF Nos. 89-90. On August 25, 2023, Defendants filed their reply. ECF No. 99.

## STANDARD OF REVIEW

## I.     Federal Rules of Civil Procedure 12(b)(2)

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or

entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted). Plaintiff's burden "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). To survive a Rule 12(b)(2) motion, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020). Prior to discovery, a plaintiff's "prima facie showing may be established solely by allegations." *Dorchester*, 722 F.3d at 85. This showing "must include an averment of facts that, if credited by the trier [of fact], would suffice to establish jurisdiction[.]" *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). The Court will "not draw argumentative inferences in the plaintiff's favor" and will not "accept as true legal conclusions couched as a factual allegation[.]" *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citation omitted); *see also Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,* 989 F.2d 572, 580 (2d Cir. 1993) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.") (internal quotation marks omitted).

## II.      Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to

relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### III.    Personal Jurisdiction[1]

Defendant Tulip India is not a resident of New York. FAC at ¶ 13. Tulip India challenges this Court's specific jurisdiction over it.

### a.    Specific Jurisdiction Under New York's Long-Arm Statute

The Court first inquires whether there is personal jurisdiction under New York's long-arm statute. N.Y. C.P.L.R. § 302(a)(1) provides that a court "may exercise personal jurisdiction

---

[1] Tulip Defendants seemingly abandon their jurisdictional argument in their reply. ECF No. 99.

over any non-domiciliary . . . who in person or through an agent . . . transacts any business

within the state," so long as the plaintiff's "cause of action aris[es] from" that "transact[ion]." *Id.*

To examine whether a court may exercise personal jurisdiction pursuant to § 302(a)(1), "a court

must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether

this cause of action aris[es] from such a business transaction." *Best Van Lines, Inc. v. Walker*,

490 F.3d 239, 246 (2d Cir. 2007) (internal citation and quotation marks omitted). A non-

domiciliary defendant must "engage[] in 'purposeful activity,' for example 'some act which the

defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws.'" *Gilbert v. Indeed, Inc.*, 513 F.

Supp. 3d 374, 412 (S.D.N.Y. 2021) (quoting *Best Van Lines*, 490 F.3d at 246–47). Plaintiff must

establish "an articulable nexus, or a substantial relationship" between their claims and actions

taken in New York. *Best Van Lines*, 490 F.3d at 246.

Under New York law, to establish the Court's specific personal jurisdiction over a parent

company based on the acts of its subsidiary, "the subsidiary must be either an 'agent' or 'mere

department' of the foreign parent." *Jazini*, 148 F.3d at 184 (citation omitted). "To prove that a

subsidiary is an agent of a parent company, a plaintiff must establish that the 'subsidiary does all

the business which the parent corporation could do were it here by its own officials.'" *LPD New

York, LLC v. Adidas Am., Inc.*, No. 15CV6360MKBRLM, 2017 WL 1162181, at *17 (E.D.N.Y.

Mar. 27, 2017) (quoting *Jazini*, 148 F.3d at 184 (alteration omitted)). *See also Gallelli v. Crown

Imports, LLC*, 701 F. Supp. 2d 263 (E.D.N.Y. 2010) ("[W]hen considering the agency issue, the

court[s] consider whether the subsidiary is carrying out its own business or the business of the

parent.") (citation omitted). A plaintiff must demonstrate that a subsidiary's "activities were for

the benefit of and with the knowledge and consent of the [parent-company] defendant, and that

the [parent-company] defendant exercised some control over the subsidiary in the matter that is the subject of the lawsuit." *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 447 (E.D.N.Y. 2015) (internal quotation marks omitted). *See Universal Trading & Inv. Co., Inc. v. Credit Suisse, 560 Fed.Appx. 52*, 55 n.1 (2d Cir. 2014) (parent company's general control over its subsidiary is not sufficient to exercise personal jurisdiction over parent).

The burden is on the plaintiff to establish jurisdiction with specificity. A plaintiff cannot survive a motion to dismiss by pleading only "conclusory non-fact-specific jurisdictional allegations[.]" *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (internal quotation marks omitted); *see also Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 333 (S.D.N.Y. 2018) (Plaintiffs "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone").

It is undisputed that Tulip NY is a New York company. FAC at ¶ 11. Upon information and belief, Plaintiff alleges Smarth is a 90% owner and operator of Tulip NY and its Managing Director; and an equal owner of Defendant Tulip India with Defendant Surender, and its CEO and Director. *Id.* at ¶¶ 7-8. Plaintiff asserts upon information and belief that Tulip India, Luna Skies, and Tulip NY "are acting as one 'vertical setup'" and Tulip India acts as the "factory" for Luna Skies and Tulip NY. *Id.* at ¶ 26. As such, JAPNA contends Tulip NY is a subsidiary of Tulip India. Defendants argue that Plaintiff merely asserts a parent-subsidiary relationship exists between Tulip India as a parent, and Luna Skies and Tulip NY as subsidiaries, but that the relationship does not warrant exercise of personal jurisdiction over Tulip India.

As currently pleaded, Plaintiff's FAC does not support exercising personal jurisdiction over Tulip India. Plaintiff impermissibly attempts to make new factual allegations regarding Defendants' "vertical setup" in declarations attached to its opposition to the motion. But "courts

cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) (citation omitted); *see also Patricia Catania & Scott Murphy, v. United Fed. of Teachers*, No. 1:21-CV-1257-GHW, 2024 WL 495638, at *8 (S.D.N.Y. Feb. 8, 2024) (disregarding disregards affidavit containing new factual allegations as improper).

As such, Plaintiff's "conclusory allegation that [Tulip India] 'owned and controlled' the operations of [Tulip NY] . . . . is insufficient to establish that [Tulip NY] was either an 'agent' or 'mere department' of [Tulip India]." *JGB Enters., Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 26 (N.D.N.Y. 2015).

Next, the Court considers whether it may exercise jurisdiction over Tulip India under N.Y. C.P.L.R. § 302(a)(3)(ii). Specific jurisdiction may be exercised over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). "Whether a defendant expected or should have expected his act to have consequences in New York is an objective test." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 409 (S.D.N.Y. 2021) (citing *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999)). "[A]bsent allegations of concrete facts known to the defendant that would have led him to foresee being sued in New York or tangible manifestations of his intent to target New York, a court may not exercise personal jurisdiction over a nondomiciliary under 302(a)(3)." *Id.* (citation omitted). "[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Kernan*, 175 F.3d at 241.

"New York courts apply the 'situs-of-injury' test which asks where the 'original event which caused the injury' occurred." *United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V.*, 509 F. App'x 48, 50 (2d Cir. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). In commercial tort cases, courts have "generally linked the injury to the place where sales or customers are lost." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 306, 946 N.E.2d 159, 165 (2011). The torts of copyright and trademark infringement "cause injury in the state where the alleged infringed intellectual property is held[.]" *Verbal Judo Inst., Inc. v. Vistelar, LLC*, No. 517CV810BKSATB, 2018 WL 8800685, at *5 (N.D.N.Y. Jan. 22, 2018) (quoting *McGraw Hill Cos. v. Ingenium Tech. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005)). *Compare Penguin Grp.*, 16 N.Y.3d at 304, 946 N.E.2d at 163, 921 N.Y.S.2d at 175 (finding "a New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access.").

In this case, Plaintiff is a New Jersey corporation with its principal place of business in New York City. FAC at ¶ 5. Plaintiff asserts Defendants conduct business in New York and derive substantial revenue from goods used or consumed and services rendered in New York. *Id.* at ¶ 35. Plaintiff alleges the three corporate Tulip Defendants Luna Skies, Tulip NY, and Tulip India "are acting as one 'vertical setup,'" and upon information and belief, "Tulip India regularly exports goods and provides services to Luna Skies and Tulip NY." *Id.* at ¶ 26. JAPNA also alleges that Defendants Smarth and Surender offered Ortiz a position at Tulip NY in exchange for "information on JAPNA's Trade Secrets, the Works, and JAPNA's exclusively licensed Product Design inventory[,]" *Id.* at ¶¶ 84, 86, and Smarth and Surender acted with the "goal of diverting JAPNA's business to Tulip NY and Tulip India," *Id.* at ¶¶ 78, 112. Ortiz allegedly

undertook actions in JAPNA's New York office to make digital copies without authorization of Plaintiff's trade secrets and the Works. *Id.* at ¶¶ 97-106. Plaintiff does not allege Defendants have uploaded its copyright or trade secrets for public access.

Because Ortiz allegedly made copies of the relevant materials in New York, and Plaintiff claims to have suffered copyright infringement, trade secret misappropriation, and other torts due to Tulip India's conduct, the relevant situs of injury is New York. Tulip India could have reasonably foreseen being sued in the state, and Plaintiff has sufficiently established personal jurisdiction under § 302(a)(3)(ii).

### b. Due Process

Because Plaintiff has established personal jurisdiction over Tulip India, the Court must next determine whether "the defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up). An analysis of minimum contacts "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotations omitted). Plaintiff must satisfy a three-prong test for the Court to exercise specific jurisdiction over the non-resident defendant:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).

Where a plaintiff "makes the threshold showing of the minimum contacts required for [exercising personal jurisdiction], a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *In re Fairfield Sentry Ltd.*, No. 10-13164 (JPM), 2024 WL 332273, at *14 (Bankr. S.D.N.Y. Jan. 29, 2024) (citation omitted). Courts consider five factors in evaluating reasonableness:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

Here, JAPNA argues Tulip India "purposefully availed" itself of New York by regularly exporting goods and providing services to Luna Skies and Tulip NY. FAC at ¶ 26. Second, Plaintiff's claims arise out of Tulip India's forum conduct: Tulip India's executives allegedly conspired with Ortiz who was based in New York to obtain Plaintiff's trade secrets. *Id.* at ¶¶ 101-102, 113-114. Finally, the exercise of jurisdiction is reasonable. Tulip Defendants have not alleged any of the five factors for reasonableness are at issue here. The Court recognizes the interests of New York in adjudicating the case and Plaintiff's interest in obtaining convenient and effective relief. Due to the intertwined nature of individual and corporate Tulip Defendants, the most efficient resolution of the controversy favors exercising personal jurisdiction over Tulip India. For the reasons stated above, Tulip India should have foreseen being haled into a New York court.

Because Plaintiffs have established a basis for exercising specific jurisdiction over Tulip India, no jurisdictional discovery is necessary.

IV.     **DTSA And New York Trade Secrets Claims.**

"The question of whether or not [information] is a trade secret is generally a question of fact." *A.F.A Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991). On a motion to dismiss, a court will sustain pleadings "so long as they provide sufficient detail that the defendant can identify the trade secret(s) at issue." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 423 (S.D.N.Y. 2021). The DTSA creates a private right of action for plaintiffs to bring claims for the misappropriation of trade secrets in federal court. 18 U.S.C. § 1836(b). To prevail on a claim under the DTSA,

> [A] party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.

*Kraus USA, Inc. v. Magarik*, No. 17-CV-6541, 2020 WL 2415670, at *4 (S.D.N.Y. May 12, 2020); *accord Zirvi v. Flatley*, 433 F. Supp. 3d 448, 464 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020). New York courts apply the following six-factor test to determine whether information constitutes a trade secret under the DTSA or state law:

> [i] the extent to which the information is known outside of the business; [ii] the extent to which it is known by employees and others involved in the business; [iii] the extent of measures taken by the business to guard the secrecy of the information; [iv] the value of the information to the business and to its competitors; [v] the amount of effort or money expended by the business in developing the information; [and] [vi] the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 672 (S.D.N.Y. 2022) (quoting *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020)). *See also* 18 U.S.C. § 1839(3). Measures to safeguard information include "the use of

confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 Civ. 8159 (GBD), 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) (citation omitted). "[A] complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 403-04 (S.D.N.Y. 2021).

To allege misappropriation under the DTSA, "a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent." *ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (citing *AUA Private Equity Partners, LLC v. Soto*, No. 17-cv-8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018)). In other words, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *AUA Priv. Equity Partners*, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citation omitted).

"Similarly, under New York common law, '[a] plaintiff claiming misappropriation of a trade secret must prove: [i] it possessed a trade secret, and [ii] defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" *Catalyst*, 602 F. Supp. 3d at 671 (quoting *Zabit*, 540 F. Supp. 3d at 421 (citation omitted). "Because '[t]he elements for a misappropriation claim under New York law are fundamentally the same' as a DTSA claim, 'courts have found that a [c]omplaint sufficiently plead[ing] a

DTSA claim ... also states a claim for misappropriation of trade secrets under New York law.'"
*Id.* (quoting *Iacovacci*, 437 F. Supp. 3d at 380 (internal citation and quotation marks omitted).

In this case, Plaintiff alleges Tulip Defendants misappropriated its trade secret (1) customer and vendor lists ("customer lists"), and (2) a "unique distribution process with respect to delivering its manufactured apparel to customers including its quality control process" ("distribution process"). FAC at ¶¶ 51, 55. JAPNA's customer lists includes "customer and vendor order preferences and price history" and requirements *Id.* at ¶¶ 48-49. Plaintiff claims its customer lists are "proprietary, difficult to replicate, and not readily ascertainable to the public." *Id.* at ¶ 49. "Until Ortiz's wrongful acts, JAPNA's Distribution Process was not known to JAPNA's competitors." *Id.* at ¶ 53; *see also Id.* at ¶¶ 56-57. Plaintiff alleges both the customer lists and distribution process "affords JAPNA a significant advantage in the market" *Id.* at ¶¶ 50, 53, 120. JAPNA's trade secrets were developed over its 18 years in business and "are extremely difficult for a competitor to replicate without inside information." *Id.* at ¶¶ 121-122.

A customer list may be a trade secret under limited circumstances, and "[t]he question of whether or not a customer list is a trade secret is generally a question of fact." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991) (citing *Chevron U.S.A., Inc. v. Roxen Service, Inc.*, 813 F.2d 26, 29–30 (2d Cir.1987); *see also* 1 *Milgrim* § 2.03, at 2–47 to 2–49 (1990) (the "existence of a trade secret is a question of fact for the determination of the trier of fact, secrecy being a basic element"). As such, whether a customer list constitutes trade secret information is a question for summary judgment.

In this case, Plaintiff describes its distribution process in vague and general terms. While a plaintiff is not required to detail the full extent of its trade secret, its description must "adequately put the defendant on sufficient notice of the contours of the claim for

misappropriation." *Zurich*, 538 F. Supp. 3d at 403-04. "Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). Here, the distribution process described is too general to put Defendants on notice of Plaintiff's claims. FAC at ¶¶ 51, 55. "Plaintiff['s] mere invocation of 'propriety formulas and methods' is insufficient without an explanation of 'how those methods [and] processes ... function,' or the purpose for which they are used." *Sapir v. Rosen*, No. 20-CV-6191 (RA), 2021 WL 4482277, at *7 (S.D.N.Y. Sept. 30, 2021) (citing *Elsevier*, 2018 WL 557906, at *6).

Still, Plaintiff has demonstrated it safeguarded the information. In JAPNA's efforts to maintain its distribution process secret, it alleges its trade secrets are "not known outside of JAPNA's business"; "are only known by [its] employees that have a need to know[] of those Trade Secrets to carry out their responsibilities"; and it takes "reasonable steps to protect the[ir] secrecy[.]" *Id.* at ¶¶ 117-119. This includes maintaining its trade secrets on password-protected desktop computers located in its office, and instructing employees to maintain the confidentiality of the trade secrets. *Id.* at ¶¶ 69, 71. Plaintiff has established that it expended some effort into developing the information and that the trade secrets afford it a competitive advantage. JAPNA has demonstrated that it undertook sufficient measures to guard the secrecy of its information. *Catalyst Advisors*, 602 F. Supp. 3d at 672; *Harley Marine NY, Inc., v. Brian Moore, et al.*, No. 123CV00163AMNCFH, 2024 WL 532496, at *4 (N.D.N.Y. Feb. 9, 2024) (finding information contained in a password-protected Dropbox account, restricted access, and subject to confidentiality agreements were reasonable measures); *Onyx Renewable Partners L.P. v. Kao*, No. 22-CV-3720 (RA), 2023 WL 405019, at *3 (S.D.N.Y. Jan. 25, 2023) (employee

confidentiality, password-protected electronic devices, and restricted access to information on a need-to-know basis are adequate security measures under the DTSA).

However, because Plaintiff has failed to state its distribution process trade secret with sufficient particularity, Plaintiff has fallen short of alleging misappropriation of the distribution process trade secret, and this claim must be dismissed. Because the question of whether a customer list constitutes trade secret information is appropriate for summary judgment, Plaintiff's customer list trade secret must stand.

### V.      Breach of Fiduciary Duty

To recover damages for breach of fiduciary duty under New York law, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684 (2d Dep't 2011) (quotation omitted). "A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge . . . but an arms-length business relationship does not give rise to a fiduciary obligation." *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 529 (2d Dep't 2001). Indeed, "[t]he fiduciary relationship must predate any alleged breach, and cannot arise based on plaintiff's subjective trust in a defendant." *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11 CIV. 4362 PKC, 2012 WL 1890388, at *8 (S.D.N.Y. May 23, 2012) (citing *SNS Bank, NV v. Citibank, NA.*, 7 A.D.3d 352, 355 (1st Dep't 2004)).

"To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: '(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach.'" *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014), *affd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig.*

16

(*DeAngelis v. Corzine*), 611 F. App'x 34 (2d Cir. 2015) (quoting *Kottler v. Deutsche Bank AG*, 607 F.Supp.2d 447, 466 (S.D.N.Y. 2009)). "A defendant participates in a breach by providing 'substantial assistance' to the primary violator, which means 'affirmatively assist[ing], help[ing] conceal or fail[ing] to act when required to do so, thereby enabling the breach to occur.'" *Kraus USA, Inc. v. Magarik*, No. 17-CV-6541 (ER), 2020 WL 2415670, at *13 (S.D.N.Y. May 12, 2020) (*In re Sharp Int'l Corp.*, 403 F.3d 43, 49-50 (2d Cir. 2005)).

"The faithless servant doctrine applies where an individual 'owes a duty of fidelity to a principal and ... is faithless in the performance of ... services.'" *In re Lehr Constr. Corp.*, 528 B.R. 598, 607 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.,* 344 F.3d 184, 200 (2d Cir. 2003)). "An employee who works to undermine or covertly compete with her employer cannot be permitted to retain the benefits of an agency relationship she has betrayed." *Miller v. Levi & Korsinsky, LLP*, No. 20 CIV. 1390 (LAP), 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021) (citation omitted). The "remedies of the faithless servant doctrine are drastic, *Id.*, and permits the principal to recover any commission or salary that it paid to the faithless servant. *In re Lehr Constr. Corp.*, 528 B.R. at 607.

Under New York law, there are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: 1) "misconduct and unfaithfulness substantially violate the contract of service" which requires a "persistent pattern", and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith." *Miller*, 2021 WL 535599, at *5 (citations and quotation marks omitted). "Some federal courts treat breach of fiduciary duty claims and claims based on the faithless servant doctrine as doctrinally distinct" while "many courts do not so distinguish the two claims, and some even

note that they are essentially the same." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020) (collecting cases). *See, e.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 524–25 (S.D.N.Y. 2011) ("Unlike a traditional breach of fiduciary duty claim, which requires a showing of actual damages, to prove a violation of New York's faithless servant doctrine, an employer is not obligated to show that it 'suffered . . . provable damage as a result of the breach of fidelity by the agent.'") (citation omitted); *Johnson v. Summit Acquisitions, LLC*, 2019 WL 1427273, at *9 (N.D.N.Y. Mar. 29, 2019) ("Breach of duty of loyalty and violation of the faithless servant doctrine are essentially the same claims, except that under the faithless servant doctrine, the employer need not show that the employee caused damages.").

Here, the Complaint alleges Ortiz "owed JAPNA a fiduciary duty as an agent of JAPNA with a relationship bestowed of heightened trust with JAPNA" due to her position as a high-level designer. FAC at ¶¶ 144-145. *See also WIT Holding Corp. v. Klein*, 282 A.D.2d at 529. Ortiz allegedly breached her fiduciary duty to JAPNA by conspiring with Tulip Defendants to disclose JAPNA's Trade Secrets, the Works, company correspondence, financial information, and customer or vendor information to them. FAC at ¶¶ 101-102, 105-107, 113-114. She did so by transferring files and information over email accounts and/or cloud storage services controlled by her or the other Defendants. *Id.* at ¶¶ 97-106.

Plaintiff has alleged Ortiz shared confidential company information with Defendants. *Id.* at ¶¶ 105-106. However, Plaintiff's fiduciary duty claim is only tied to its trade secrets claims, which Plaintiff has not sufficiently pleaded. Where a party "fails to allege the existence of a trade secret" it "thus cannot premise a claim for breach of fiduciary duty on disclosure of trade secrets." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 93 (S.D.N.Y. 2022). Therefore,

JAPNA's breach of fiduciary duty claim against Ortiz, and the claim against Tulip Defendants for aiding and abetting Ortiz's breach of fiduciary duty must be dismissed.

However, Plaintiff's faithless servant claim against Ortiz must stand. Plaintiff alleges Ortiz "breached her fiduciary duty to JAPNA by engaging in repeated acts of disloyalty to JAPNA[,]" *Id.* at ¶ 161, including by misappropriating JAPNA's trade secrets, and transferring the Works and passwords to herself and Tulip Defendants, *Id.* at ¶¶ 159-160. While Plaintiffs have not established their trade secrets claims, they have pleaded sufficient facts that Ortiz committed a "persistent pattern" of misconduct by transferring confidential information to herself and to Defendants.

## VI.    Copyright

Defendants argue that Plaintiff has not adequately alleged a claim of copyright infringement because Plaintiff failed to specifically identify any copyrighted work, and to establish ownership of any work.

The Copyright Act provides the owner of a copyrighted work with "the exclusive right to...reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). To prevail on a claim for copyright infringement, the plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012).

To prove the second element of a copyright claim, a plaintiff must show that the defendant "actually copied [their] work, and that such copying was illegal because a 'substantial similarity' exists between the allegedly infringing work...and the protectable elements of the

copyrighted work[.]" *Porto v. Guirgis*, 659 F. Supp. 2d 597, 608 (S.D.N.Y. 2009) (citing *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

Plaintiff has sufficiently alleged a copyright claim. Plaintiff pleaded it is the assignee or exclusive rightsholder for certain copyrighted works originating in the United Kingdom. FAC at ¶¶ 165, 167-169. The Complaint identifies the Works by pattern number. *Id.* at ¶ 60. Because the work was first published outside of the United States, it is not a United States work, and is exempt from Section 411(a)'s registration requirements. 17 U.S.C. §§ 101, 411(a); FAC at ¶ 167-9. JAPNA alleges Ortiz transferred the Works to herself. *Id.* at ¶ 160. Plaintiff alleges Tulip Defendants violated its exclusive rights in the Works, including rights to copy, distribute, reproduce, and create derivative works of the Works, *Id.* at ¶ 170, and "Smarth, Surender, Ortiz each knowingly induced, participated in, aided and abetted, and resultantly profited from the illegal copying, distribution, reproduction, and creation of derivative works of the Works[,]" *Id.* at ¶ 172. Plaintiff also alleges that Ortiz "introduced SELFX NY to JAPNA's inventory of copyrighted designs that SELFX India, and its Directors Abhishek and Pawan, could produce these as their line of apparel[.]" *Id.* at ¶ 93. Plaintiff's Works are easily identifiable, and it alleges Defendants violated its exclusive rights to the Works.

As such, Plaintiff has sufficiently alleged copyright infringement against Tulip Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint against Tulip India pursuant to Fed.R.Civ.P. 12(b)(2) is **DENIED**. Plaintiff's claims for misappropriation of its distribution process trade secret, and breach of fiduciary duty are

**DISMISSED**. Defendants' motion to dismiss Plaintiff's claims for misappropriation of its customer list, faithless servant, and copyright infringement is **DENIED**.

Rule 15(a)(2) states "the court should freely give leave [to amend] when justice so requires." The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178).

Because Plaintiffs fail to plead adequate facts to support certain claims, the Court will afford Plaintiffs the opportunity to amend their Complaint to attempt to cure its deficiencies. Plaintiffs may file their Amended Complaint on or before **April 5, 2024**.

**SO ORDERED.**

Dated: March 22, 2024
      New York, New York

_____
      **ANDREW L. CARTER, JR.**
      **United States District Judge**